COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 02-09-00237-CR


JAMES CLAYTHAN BLEVINS                                                  APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION ON REHEARING




------------
        We have considered Appellant’s motion for rehearing and motion for
reconsideration en banc of our opinion issued August 31, 2010. We deny both
motions, withdraw our August 31, 2010 opinion and judgment, and substitute
the following.
        In three issues, Appellant James Claythan Blevins appeals his convictions
for attempted murder and felony violation of a protective order. We affirm.
        After threatening to kill his wife Amy and their two young sons, Appellant
moved out of the house and signed an agreed protective order prohibiting him
from coming within three city blocks of the home. The next month, Appellant
violated the protective order and Amy filed for divorce. Appellant later pleaded
guilty to the misdemeanor offense of violating a protective order. 
        Two months later, on June 13, 2008, Amy was at the house packing up
to move. Jason Myers, a friend of her sister’s husband, had offered his pickup
truck to help. He had parked the truck out front and was inside helping her
pack. Around seven in the evening, Appellant appeared at the front door and
walked into the house. When he saw Amy, he started screaming at her. And
when he saw Jason rounding the corner from the dining room, he shoved Amy
aside and attacked the former Marine and Iraqi war veteran, punching him in the
face. Jason subdued Appellant by holding him against the wall as Amy
announced that she was calling the police. Appellant warned her that he would
kill her if she did, and when Jason released his hold on him, Appellant stormed
out of the house, climbed into his car, and sped away. He called his mother
and told her that he was going to get his guns and go kill Amy. 
        Wichita Falls Police Officer Robert Rosdahl responded to Amy’s 911 call.
He and Amy stood in her driveway filling out his report when Appellant’s car
passed by and made the turn onto her street. When the driver’s side came into
view, Amy saw that Appellant was leaning out the window with a shotgun. As
Appellant pulled in front of the house, Officer Rosdahl drew his service weapon
and ordered him to put the shotgun down. Appellant complied, dropping the
shotgun after a brief standoff. As the officer wrestled him into the patrol car,
Appellant yelled to Amy that no matter how long he was locked up, he would
get out, get another gun, and come kill her. 
        After securing Appellant in the patrol car, Officer Rosdahl retrieved the
shotgun from Appellant’s car. It was loaded with four .410 shotgun shells.
Underneath the driver’s seat, the officer also found a knife and a Derringer
chambered for a .410 shotgun shell. 
        The grand jury indicted Appellant for attempted murder, retaliation, and
felony violation of a protective order. A jury found him not guilty of retaliation
but guilty of attempted murder and felony violation of a protective order. It
assessed his punishment at eleven years’ confinement with a $5000 fine for
attempted murder and five years’ confinement for violation of a protective
order. The trial court sentenced Appellant accordingly. 
        In his first issue, Appellant contends that the evidence is insufficient to
sustain the verdict for attempted murder. In reviewing the sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
        One of the essential elements of attempted murder is that, while acting
with specific intent to commit murder, the defendant does an act amounting to
“more than mere preparation” that tends but fails to effect the murder. See
Tex. Penal Code Ann. § 15.01(a) (Vernon 2003). Appellant claims that the
evidence is insufficient to prove this essential element. He argues:
The evidence produced at trial, when viewed in the light most
favorable to the verdict, showed that after [Appellant] stated that
he intended to kill his estranged wife, he went home, retrieved his
shotgun, got into his vehicle and drove towards her home. While
[Appellant] was still approximately 40 yards away from the house,
however, he was intercepted by Officer Rosdahl. Officer Rosdahl
testified that [Appellant] did not attempt to fire the weapon [and]
was unable to point the firearm out of the window. 
[Emphasis added]
        Appellant’s account of the evidence produced at trial misapplies the
standard of review, which requires us to view the evidence in the light most
favorable to the verdict. He entirely ignores Amy’s testimony that she saw
Appellant with “a shotgun hanging out the driver’s side window” as he drove
around the corner; that Officer Rosdahl turned around and noticed “the shotgun
hanging out the window”; that although Appellant did not fire the weapon, “he
aimed it”; and finally, that he “was pointing it” at her. Furthermore, Jason
testified that as Appellant pulled up he could see the “firearm coming around
and out the window”; that “he had it out the window pointed”; that “he looked
very intent on shooting”; and that if the officer had not been there nothing
would have stopped Appellant from shooting Amy. 
        In Godsey v. State, the court of criminal appeals noted that the purpose
and usefulness of the criminal attempt statute is that it permits law
enforcement personnel to intervene and prevent the harm intended and that the
precise intent of the statute is to punish action for the intended offense while
allowing intervention before an act constituting the offense itself occurs. 719
S.W.2d 578, 583 (Tex. Crim. App. 1986). The case before us is an example
of the legislature’s “precise intent” as set out in the criminal attempt statute put
to good effect. As Jason testified, had Officer Rosdahl not been there to
intervene, there would have been little or nothing to have stopped Appellant
from committing murder.
        Although Officer Rosdahl’s testimony that Appellant could not manage
to get the shotgun pointed out the window—despite trying to—appears to
contradict testimony from Amy and Jason that Appellant pointed it out the
window, we presume the jury resolved the apparent conflicts in favor of the
prosecution, and we defer to that resolution. See Jackson, 443 U.S. at 319,
326, 99 S. Ct. at 2789, 2793; Clayton, 235 S.W.3d at 778. Thus, viewing
the evidence in the light most favorable to the verdict, we hold that the
evidence is sufficient to show that Appellant took a loaded shotgun to Amy’s
house intending to kill her with it and that his act amounted to more than mere
preparation that tended but failed to effect Amy’s murder. Accordingly, we
hold that the evidence is sufficient to support the verdict, and we overrule
Appellant’s first issue. See Godsey, 719 S.W.2d at 583.
        In his second and third issues, Appellant contends that the evidence is
legally and factually insufficient to support his conviction for felony violation of
a protective order by committing family violence against Amy because Amy
testified that when Appellant shoved her, she did not feel any pain. Because
the court of criminal appeals has recently held that sufficiency of the evidence
claims will only be reviewed under the standard set out in Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789, we consider the evidence in the light most favorable
to the verdict and not in a neutral light. See Brooks v. State, 323 S.W.3d 893,
894–95 (Tex. Crim. App. 2010).
        Appellant argues that although family violence includes acts intended to
result in assault as defined by Texas Penal Code section 22.01(a)(1) and (a)(2),
it excludes assault defined by subsection (a)(3). 
        A person against whom a protective order is in place commits the offense
of violating a protective order if he knowingly or intentionally commits an act
of family violence. Tex. Penal Code Ann. § 25.07(a)(1) (Vernon Supp. 2010).
“Family violence” has the meaning assigned by chapter 71 of the family code,
which defines it as “an act by a member of a family or household against
another member of the family or household that is intended to result in physical
harm, bodily injury, assault, or sexual assault . . .” Id. § 25.07(b)(1); Texas
Fam. Code Ann. § 71.004(1) (Vernon 2008) (emphasis added). Under the plain
meaning of penal code section 22.01(a)(3), assault includes intentionally or
knowingly causing contact with another when the person knows or should
reasonably believe that the other will regard the contact as offensive or
provocative. Tex. Penal Code Ann. § 22.01(a)(3) (Vernon Supp. 2010). We
reject Appellant’s invitation to hold that assault includes less than what the
legislature wrote into the plain language of the statute. Applying the plain
meaning, therefore, we hold that the evidence is sufficient to support the jury’s
implied finding expressed in its verdict that Appellant’s shoving Amy, whether
or not she felt any pain, was intended to result in intentional or knowing
offensive physical contact. Accordingly, we overrule Appellant’s second and
third issues.
        Having overruled all of Appellant’s issues, we affirm the trial court’s
judgment.


                                                          ANNE GARDNER
                                                          JUSTICE

PANEL: GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice,
Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 30, 2010